The next case today, number 231067, United States v. Pedro Martinez-Mercado. Will counsel for Martinez-Mercado please introduce yourself on the record to begin. Good morning. I may please the court, Jose Velez, on behalf of defendant-appellant Pedro Martinez-Mercado. I would like to request two minutes for rebuttal, please. You may have two minutes. Thank you, Your Honor. In this appeal from the appellant's conviction, in this appeal from appellant's conviction for one count of misappropriation of federal funds in violation of 18 United States Code section 1711 and a second count of theft of government property in violation of 18 United States Code section 641. The facts in this case as demonstrated during trial was that appellant worked for the United States Postal Service for over 20 years. On September 18th of 2017, the appellant was employed as a postmaster in the Sabana Grande Post Office Branch in Puerto Rico. Counsel, you understand that we've read the briefs and know the facts. Pardon me, Your Honor? I said you understand that we've read the briefs and are familiar with the facts. Yes, Your Honor. I just don't want you to waste your time telling us facts that we already know. I do want to highlight several facts that are important for the four issues that are raised on appeal. Specifically, there's one issue of first impression, which is being able to raise the defense of intent to repay in 1711 charges and 641. And then the second issue, which is the instructions that were imparted by the district court at the time after the jury sent a jury note requesting clarification as to the third element of section 641. And I do think that there are some facts that are crucial for this court's consideration in order to be able to rule on those issues. And so, as I was saying, the facts of this case... So maybe give us your best, like, let's start with the first issue. Give us your best argument under that issue with the facts that you think we should really pay attention to.  Certainly, Your Honor. This case happened exactly two days before Hurricane Maria came to Puerto Rico and devastated the island. So I just want to put, Your Honors, in perspective of the timeframe in which we're dealing concerning the first issue. The court erroneously excluded the possibility of raising the defense of intent to repay. In this case, the district court improperly barred evidence that would have shown that appellant's intent to repay the postal funds was relevant to disproving the specific intent required for conviction. In these two main issues that we're arguing before, Your Honors, the factor intent is crucial. We cited in our brief United States versus American Grain-related Industry, highlighting specifically why the appellant should have been able to raise the defense of intent to repay. And in that case, the defendants were able to present evidence that they repaid, embezzled, or converted money. That was not in dispute. The jury, by being able to hear the defense of intent to repay, would have been instructed that efforts to replace were relevant in determining whether the defendants had the intent necessary to commit a willful act. It's unclear from your brief what evidence you would have submitted to show intent to repay. From what I can tell, you did submit evidence regarding your client's attempt to submit the remittance. Correct, Your Honor. So what else would you have presented? Or is the problem really that you weren't able to argue what that evidence means, that it meant the government couldn't sustain its burden? The defense was unable to argue the fact that in this particular case, the United States did not lose a penny. All the funds were repaid, including before initiating the formal investigation against the appellant. So by not being able to say, hey, members of the jury, the defendant had the intent to repay all the funds that were teared open from the remittance bag and used for the benefit of the United States Postal Service Branch. You were not able to consider whether or not he had the required criminal intent to convict. Counsel, the government filed a motion to eliminate or bar that evidence, and the defendant filed no objection to that motion. Correct, correct. So that's a problem, isn't it? Well, I... And the reason it didn't come in is because there was no objection when the motion was excluded. Short answer, Your Honor, I would have to concede that this is for plain error. Okay. But the government raises in its brief that the defendant, that the appellant waived the argument. And our position is that, yes, we concede that it was forfeited, but it was not waived. Okay, so when I read the government's brief, it's full of citations to cases that say intent to repay is not a defense. You tell me there are some other cases that say it is, but there's no First Circuit case, right? There is no First Circuit case. The First Circuit has never expressed concern in this matter.  So you disagree with the citations in his brief that he says tell us intent to repay is not a defense, understanding you have some other cases? Do I disagree with the government? Yeah. Are those wrong citations? No, they're not wrong citations. They're certainly not, Your Honor. So we don't have any clear, obvious law in this circuit on the question? There is none. I thought you were making a different argument. Excuse me, Your Honor? Assuming it's not waived, I thought you were making a different argument. I thought your argument was not that it was a defense, but that it goes to the evidence of intent, which is different. Well, it does relate, Your Honor, and this is why. But I thought it was a distinct argument. Well, they're two different arguments, but, again, they come together with the issue of intent. The intent that's required in both statutes for which the defendant was tried. And this is why. If the defendant would have been able to raise the defense of intent to repay, let me backtrack. The statute has two parts. Specifically, I'm addressing Section 18, Section 641. It's a two-prong. It has the intent of specific depriving the government of United States Postal Funds. So that's the second part of the statute. The first part of the statute is willingly and knowingly converting the use of those funds for my personal use. And so the issue in this case comes down to the second prong, which is the specific intent required to deprive the government from its fund. And this is where the ability to be able to raise the defense of intent to repay comes in, and it's crucial. Because in the sense that you can present to a jury that the defendant did not have the criminal intent because he had the intent to repay the funds, then the jury might be able to say, well, this guy did not have the criminal intent required to be able to find him guilty of this particular charge. And so that's why it's important. I hope I'm answering your question. And they are two different issues, but they relate in the sense that the criminal intent that's required to convict is a specific intent. But for some of the money he used for personal use, right? I think that's clear. And that's conceded. That is conceded. So if he's converting and he – let's just assume now he intends to pay it back. For that period of time that he took money not his to use for his personal use, no matter what he thinks later, isn't that conversion? It is. And in that sense, our point, our issue on that specific sense is that there's no dispute that some of the funds were converted. Now, it did not raise the threshold of the $1,000 required by statute. And so that's – I think that's the third or the fourth issue that was raised on our brief. If the court has any other questions, otherwise. Your time is up. Thank you. Thank you. Thank you, counsel. Will counsel for Applee please introduce yourself on the record to begin? May it please the court. Thomas Klumper on behalf of the United States. It's the government's position on that issue that the court was addressing was that the defendant waived. He actually abandoned that argument by, one, not objecting to any – with the government's motion in limine. And that in allowing to introduce evidence of intent to repay or replace. And, two, actually it's further waived because during the trial we also submitted a motion with the jury instructions, again, expressing that. And the defendant did not object. So our argument is it's doubly waived. And including with the argument, let's say, hypothetically, he was raising it for the supposedly intent purposes of – because they were trying to distinguish evidence versus was it intent himself in this one. And it's doubly waived because he didn't object to that instruction itself, that intent is not – intent to repay is not a defense. So let's agree intent to repay is not a defense, okay? Let's assume we agree with that. It seems to me he did also on the merits make an argument that the evidence of intent to repay would be relevant to establishing whether or not he had the intent necessary to commit the crime here. How do you respond to that argument? Well, first of all, the case that it relies upon, the Grain versus whatever case, what it did was that was a totally different statute. It wasn't even related to 170 – 1711 or the 641 type of offense. And two, that was in connection with a conspiratorial type of offense. So what is your position? Our position is, is that the crime was committed at the moment he did the crime itself, when he took the money out, opened it up, and took the bag itself. In the middle of the hurricane? Well, the hurricane had already passed. And that's where the jury did not believe in that. Because his argument was I had no intent because there was an emergency. And the jury didn't believe that. He kept raising that issue and tried to bring that up. And that's the reason why I took the money. So is your – to get back to my question. Yes. Is your position that intent to repay is never relevant to establishing whether or not he had the intent necessary to commit the crime? I think so in regarding 641 and 11 – or 1711. Because what they look at – And what case do you rely on for that? I'm relying on the circuits that I've cited, the Friend case, the Ross case from the Ninth Circuit. So the idea would be – the argument would be conversion is not borrowing. And he wants to say – I'm borrowing. I borrowed the money. It was only to borrow it. It was always only to borrow it. That's not conversion. Why is that wrong? Well, I think because what happened was there's cases out there because their temporal aspect is what's involved. Was it temporary versus – there is no – what you have to look at is that it doesn't matter if it was temporary or if it was long-term. So it's irrelevant whether he temporarily took the money or not. So how can it be a defense? It's irrelevant that it is. And you tell me it's irrelevant why. Does conversion – is a part of conversion is not intent to permanently deprive? Like what's the reason it's not relevant? It's not relevant because when he committed the crime itself, then it was no longer a valid defense that I did not – But that presumes the answer. The question is if you're thinking at the moment you take the money, I'm only going to borrow it because I didn't bring lunch money today. I'm going to go into the government drawer and take out a $10 bill, and I'm going to go buy lunch. Tomorrow I'm going to bring it back and put it back in the drawer, and that's my plan. Is that conversion? Yes, there are cases on point just like that that I cited. And what happens is also as part of the policy reason, if you look at it in Friend case, what they decided was, look, then that would – it would defeat the purpose of what would be the theft in itself, saying, oh, I'm going to temporarily take this money and borrow it and repay it back. Then you could never charge a crime of theft or even conversion in this case. What happened was there was one case which I noticed that there was – if it was simultaneous where the defendant went and got a money order and then put the money back in because that would violate the policy of the BOP. And they said that was simultaneously putting the money in versus not. There is one case, Lester, which was from the Fifth Circuit, but that was because it was simultaneous. It wasn't because temporary or permanent. And you have to look at the facts of this case. What did the defendant do? He admitted, yes, I owned it. And the amount of money that he took, he's claiming I only took $300 or this. He kept waffling. Even his explanations didn't even make sense for what he was doing in this case because he was claiming, oh, at first, the first day he testified, I didn't buy food or do anything. The second day, what did he do? Oh, yes, I bought candles, food, and water, things like that. And his explanation, even about the amount of what was going on in the case, do not add up. And the jury did not believe it. The jury did not find it credible. So in this case, our position is that, one, he waived it because he abandoned it by agreeing to it. And, two, even if not, under plain error, he doesn't really address it, the factors of four factors. So it's a doubly waived is our position on that factor. Now, with regard to any other issues, do the court have any questions? I have a question about the clothing argument, which somewhat troubled me in the following way. The AUSA says, you know, you always blame the victim. That's what they, meaning defendants, always do. And I'll tell you why that troubles me. That's the AUSA, it strikes me, is bringing whatever his experience may be outside of that courtroom, doing other cases, and bringing it into that courtroom and saying, jury, trust me, I know this is the same line that they always use. And I don't think a prosecutor should be doing that. What's your response? My response is that, in this case, it was in response to the defendant was trying to actually put the blame on the government for taking, getting the funding, or excuse me. And you can say, that's what they're doing here. But what that AUSA said is, that's what they always do, which is broad brushing that defendant with the pregnant pauses there. Everything I've seen before in my career as an AUSA is just like this. So you should trust me, jury. That's a bunch of nonsense. And the reason is because I've done other trials that, jury, you haven't. Well, my first response is, in this case, he didn't object to it, nor did he raise it afterward. So in this case, it would be waived, in this case. And secondly, in response, it would even, if anything, if there wasn't, it would be harmless. Because you look at the factors, how overwhelming was the evidence in this case. And two, as for the factor, he did not address the four or five factors of Mooney, which the First Circuit requires, for such an issue. So our position, it would be waived. And if not, anything could even be harmless at all. Any other questions from the panel? I rest on my break. Thank you, counsel. Well, Attorney Velez, please reintroduce yourself on the record. You have a two-minute rebuttal. Jose Velez for appellant. I would like to briefly on these two minutes just address the waiver argument raised by my friend on the other side, as well as the conversion concerning the waiver. It is clear from the record that concerning the intent to repay, although a motion in limine in response was not filed prior to the commencement or beginning of the trial, there was a sidebar or there was an open court conversation addressing specifically that matter. And the defense did state for the record, so long as the government will not open that door, the defense will not argue the defense intent to repay. Now, the record is full of evidence that based on the testimonies rendered by the government's own witnesses. I don't know what that means. Open what door? Open the door of being able to argue, hey, the defendant had the intent to repay that money. So that was an assertion, a statement that was made. Why would the government say anything about that in its presentation? No, no. That was the defense, Your Honor. Pardon me? That was the defense. This was a conversation between the judge, the prosecutor, and the defense right before the jury walked in at the beginning of trial. I understand that. But I'm saying who is saying as long as the – you said as long as the government doesn't open that door. Why would the government open the door that the defense was that he had an intent to repay? I'm not – Because the issues – the facts in this case did go – did address the fact that the defendant, when he left the branch in which he was working in Puerto Rico, he took the money with him, part of the money with him. And once he was in New Jersey, he did send a priority mail back with an envelope, which content was money orders and checks. And so there was – may I finish this train of thought? There was a sending of reimbursement or intent to repay the funds that did belong to the United States Postal Service. So our position was as long as the government does not open the door and brings in evidence concerning this intent to repay, the defense will stand by the court's ruling. If the government opens that door, then the defense would ask to be able to bring that defense in. And that's exactly what happened. During the trial, the government's own witnesses testified about receiving a mail which they opened up. The content of the mail had the money orders, had the checks, had the receipts. And so our position is that contrary to the government's argument that it was waived, it was perhaps untimely asserted, but it was definitely not abandoned. Thank you. That concludes arguments in this case.